IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE LOUISE MASSA, | No. 2:23-CV-1793-DMC |
| Plaintiff, | |
| v. | <u>MEMORANDUM OPINION AND ORDER</u> |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 7 and 10, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c); <u>see also</u> ECF No. 11 (consent minute order). Pending before the Court are the parties' briefs on the merits, ECF Nos. 17 and 21.

        The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

Step 1  Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied.

Step 2  If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied.

Step 3  If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled, and the claim is granted.

2

|  |  |  |
|---|---|---|
| | Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied. |
| | Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on December 6, 2019. See CAR 13.[1] Plaintiff claims disability began on January 2, 2019. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on March 1, 2021, before Administrative Law Judge (ALJ) William Spalo. In a March 18, 2021, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): spinal stenosis, chronic compartment syndrome in lower and upper extremities, anxiety disorder and depressive disorder.

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.

3. The claimant has the following residual functional capacity: the claimant has the residual functional capacity to perform light work; the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 4 hours; sit about 6 hours; she can never climb ladders/ropes/scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl; she can occasionally climb ramps/stairs; she is able to work with simple instructions involving simple tasks; she can occasionally interact with the public in the work setting.

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 16-23.

After the Appeals Council declined review on December 15, 2021, Plaintiff filed a prior action for judicial review, Massa v. Kijakazi, E. Dist. Cal. case no. 2:22-cv-0292-JDP. Pursuant to the parties' stipulation, on August 4, 2022, the matter was voluntarily remanded for further proceedings. See id. On December 22, 2022, the Appeals Council vacated the prior administrative decision and referred the case to an ALJ for another hearing and decision. See CAR 527-28.

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on October 25, 2023, ECF No. 8.

A second hearing was held before the same ALJ on April 13, 2023. See id. at 450. In an April 27, 2023, decision, the ALJ again concluded Plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): spinal stenosis, chronic compartment syndrome in lower and upper extremities, anxiety disorder, depressive disorder, and post=-traumatic stress disorder (PTSD).
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.
>
> 3. The claimant has the following residual functional capacity: the claimant has the residual functional capacity to perform light work; the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 4 hours; sit about 6 hours; she can never climb ladders/ropes/scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she must elevate her legs about 6 to 10 inches while sitting; she must be allowed to work at a flexible pace with no fast-paced production rates and only end-of-the-day requirements with no other periodic or hourly quotas; she can occasionally climb ramps/stairs; she could work with no teamwork or tandem tasks involved; and she requires an extra 5- to 10-minute break 3 to 4 times per week.
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 453-59.

The Appeals Council denied further review and the current action for judicial review followed.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

### III. DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ erred with respect to evaluation of the medical opinions; (2) the ALJ failed to state sufficient reasons for rejecting Plaintiff's subjective statements and testimony; and (3) the ALJ failed to provide reasons for rejecting lay witness testimony. See ECF No. 17.

#### A. **Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstances when opinions from "other sources" may be considered acceptable medical opinions).

///

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c. These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source. See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]"). Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources. See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness." See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)). Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be." See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)). "For consistency, the regulations state: '[t]he more consistent a

7

medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).  "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'"  Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

At Step 4, the ALJ evaluated the medical opinion evidence in determining Plaintiff's residual functional capacity.  See CAR 456-48.  Specifically, the ALJ considered opinions from the following sources: (1) state agency psychological consultant A. Kerns, Ph.D.; (2) state agency psychological consultant Phaedra Caruso-Radin, Psy.D.; (3) psychological expert David Peterson, Ph.D.; (4) Plaintiff's therapist, Robert McKinnon, LMFT; (5) state agency medical consultant S.Lee, M.D.; (6) state agency medical consultant G. Williams, M.D.  See id.  The ALJ found the opinions of Drs. Kerns and Caruso-Radin to be "somewhat persuasive" to the extent they "show that the claimant is more functional than alleged. . . ."  Id. at 456-57.  Dr. Peterson's opinion was found to be "most persuasive" with respect to mental limitations.  See id.  Mr. McKinnon's opinion was found to be "somewhat persuasive."  Id. at 457.  Finally, the opinions presented by Drs. Lee and Williams were found to be "generally persuasive" as to Plaintiff's physical limitations.  See id. at 458.

In her opening brief, Plaintiff takes issue with the ALJ's evaluation of the medical opinions concerning her mental limitations.  See ECF No. 17, pgs. 24-26.

Regarding the medical opinions offered by Drs. Kerns, Caruso-Radin, Peterson, and Mr. McKinnon, the ALJ stated as follows:

> . . . The State agency's mental consultant A. Kerns, Ph.D., completed an opinion dated May 26, 2020 and stated that the claimant is able to carry out simple (one- to two-step) instructions; she could follow simple work-like procedures and make simple work-related decisions; she could carry out simple tasks in situations where a supervisor or coworker is occasionally present to explain tasks and give directions; she has an adequate ability to perform at a consistent pace if engaged in a simple task; she could complete tasks that do not require more than daily planning or independent prioritization of tasks; she has a limited, but adequate,

ability to interact appropriately with the public, coworkers, and supervisors; she would be best suited to work with minimal social demands where interaction with others is superficial, non-collaborative, and occasional; she could work in environments where there is no expectation to resolve conflicts or to persuade others to follow demands. (Ex. 1A).

The State agency's mental consultant Phaedra Caruso-Radin, Psy.D. completed an opinion dated August 4, 2020 and stated that the claimant could understand, remember, and apply knowledge and carry out a 2-step command involving simple instructions and maintain concentration, persistence, and pace for such; she may have difficulty sustaining attention over extended periods but she could sustain concentration, persistence, and pace for 4-hour increments with customary work breaks; she is able to complete a usual workday and workweek; she is generally able to interact with others but she would function better in an environment where she has no more than occasional public contact; and she is capable of responding appropriately to feedback from supervisors. (Ex. 3A).

At the April 13, 2023, hearing, psychological expert David Peterson, Ph.D., testified to his review of the claimant's treatment records. Dr. Peterson opined that the claimant's impairments do not meet or equal listings 12.04, 12.06, or 12.15. Dr. Peterson rated the claimant's limitations under the mental disorders' "paragraph B" criteria as: no limitations under understanding, remembering, or applying information; no limitations in interacting with others; moderate limitations in maintaining concentration, persistence, or pace; and moderate limitations in adapting or managing herself. Dr. Peterson opined that the claimant has no limitations in performing simple, repetitive, detailed, or complex tasks except that she could perform low stress work that does not require teamwork or fast-paced quota work. When asked to put his opinion into concrete vocational terms, Dr. Peterson stated that the above residual functional capacity finding would be consistent with his opinion of the claimant's functioning.

Drs. Kerns and Caruso-Radin's opinions are somewhat persuasive, but only to the extent that they show that the claimant is more functional than alleged whereas Dr. Peterson's opinion is most persuasive. Under the supportability factor of 20 CFR 404.1520c(c)(1), Drs. Kerns and Caruso-Radin supported their opinions by citing the claimant's suicide attempt while also noting instances of normal examination findings, her reports of improved symptoms with treatment, and Mr. McKinnon's opinion at Exhibit 4F. (Ex. 1A, 3A). Dr. Peterson also supported his opinion by taking into account the claimant's reports of anxiety and panic attacks during treatment, Mr. McKinnon's opinion at Exhibit 4F that suggest that the claimant is socially functional but has issues with persistence and managing herself, Drs. Kerns and Caruso-Radin's opinions, and Mr. Wilhelmson's [Plaintiff's boyfriend] observations.[2]

///

---

[2] The ALJ's consideration of Mr. Wilhelmson's lay witness evidence is discussed below.

Although Drs. Kerns and Caruso-Radin supported their opinions, Dr. Peterson's opinion is more consistent with the evidence under the consistency factor of 20 CFR 404.1520c(c)(2). For example, Dr. Peterson's opinion provide[s] for more reasonable limitations when considering the claimant's counseling with Mr. McKinnon and her hospitalization for suicidal ideation in September 2018. Dr. Peterson's opinion provides for more reasonable limitations when also considering the claimant's reports as early as February 2018 that medication worked well for her mood and anxiety (Ex. 1F/11, 19); her periodic demonstration of normal psychiatric examination findings at primary care (Ex. 1F); her reports of not being a suicide risk after her September 2018 suicide attempt (Ex. 3F); and her reports that counseling was helpful at reducing her anxiety and depression (Ex. 1F/11, 9; 3F/16). In light of the claimant's response to treatment, the above residual functional capacity finding provides limitations more consistent with Dr. Peterson's opinion rather than unskilled-type limitations with social limitations and a limitation on the complexity and number of steps per task that she could perform that Drs. Kerns and Caruso-Radin would suggest. To accommodate the claimant's symptoms even further, the above residual functional capacity finding provides an allowance concerning work breaks.

Robert McKinnon, LMFT, the claimant's provider, completed an opinion dated February 10, 2020, and stated that the claimant has presented with guarded interview behavior, poor emotional differentiation, mildly impaired concentration, mildly impaired recent memory, intrusive thoughts, anxious mood, compulsions, and suicidal ideation, and mildly impaired judgment. Mr. McKinnon stated that the claimant has a good ability to: understand, remember, and carry out complex instructions; perform activities within a schedule and maintain regular attendance; and interact appropriately with supervisors. Mr. McKinnon stated that the claimant has a good-to-fair ability to maintain concentration, attention, and persistence as well as to respond appropriately to changes in a work setting. Mr. McKinnon stated that the claimant has a fair ability to complete a normal workday and workweek without psychological symptoms. (Ex. 4F).

Mr. McKinnon's opinion is somewhat persuasive. On one hand, Mr. McKinnon's opinion that the claimant has a good and good-to-fair ability to work is based upon his observations during treatment that he summarized within his opinion. (Ex. 4F/1-3). This appears to satisfy the supportability factor of 20 CFR 404.1520c(c)(1).

However, Mr. McKinnon's opinion that the claimant has a fair ability to complete a normal workday and workweek has issues with consistency with the evidence under 20 CFR providers that medication has worked well for her mood and anxiety (Ex. 1F/11, 19); her primary care provider has periodically noted normal psychiatric examination findings (Ex. 1F); she has denied being a suicide risk on multiple occasions after her September 2018 suicide attempt (Ex. 3F); and she has told providers, including Mr. McKinnon that counseling was helpful at reducing her anxiety and depression (Ex. 1F/11, 9; 3F/16). This evidence is not only not

/ / /

/ / /

> entirely consistent with Mr. McKinnon's opinion, but it is also more consistent with Dr. Peterson's opinion. Accordingly, Dr. Peterson's opinion is more persuasive than Mr. McKinnon's opinion.

CAR 456-58.

Plaintiff first argues that the record undermines the ALJ's conclusion that Dr. Peterson's opinions were better-supported than those offered by the state agency consultants, Drs. Kerns and Caruso-Radin. See ECF No. 16, pgs. 24-26. Next, Plaintiff argues that the ALJ's conclusion that Dr. Peterson's opinion is "more consistent" with the evidence than the opinions offered by Drs. Kerns and Caruso-Radin and Mr. McKinnon is unexplained. See id.

Turning to Plaintiff's argument that the opinions of Drs. Kerns and Caruso-Radin were better supported than those of Dr. Peterson, contrary to the ALJ's finding, Defendant notes:

> . . . As an initial matter, state agency consultants make prior administrative medical findings at the initial and redetermination levels of review; they do not provide medical opinions. 20 C.F.R. § 404.1513(a)(5). ALJs are "not required to adopt any prior administrative medical findings." 20 C.F.R. § 404.1513(a)(b)(1). Here, the prior administrative medical findings were made in May 2020 and August 2020, based on a fraction of the evidence that is now in the record. Tr. 61-76, 78-93. In contrast, Dr. Peterson provided his medical opinion in April 2023, having reviewed the record in full – including evidence that did not yet exist when the state agency consultants made their findings about three years earlier. Tr. 481, 491-92. . . .
> Although Plaintiff may have drawn different conclusions if she was the fact finder, this ignores the extremely deferential "substantial evidence" standard of review. 42 U.S.C. § 405(g). Substantial evidence is simply "more than a mere scintilla"; it "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). The mere "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). Because more than a mere scintilla of evidence supports the ALJ's decision, the Court should affirm.

ECF No. 7-8.

The Court agrees with Defendant. First, the opinions from Drs. Kerns and Caruso-Radin are distant in time – May and August 2020, respectively – whereas Dr. Peterson's opinion was rendered more recently in 2023. As such, Dr. Peterson's opinion is indicative of Plaintiff's condition after August 2020 through the date she returned to full-time work in June 2021. Finally, as Defendant correctly notes, it is for the ALJ, not this Court, to determine the weight to

11

be given to differing medical opinions. Even where the opinions suggest differing conclusions, as long as there is some evidence, as there is here, to support the ALJ's conclusion, this Court must give deference to that determination. The Court finds that ALJ has adequately explained, consistent with the new regulations, how Dr. Peterson's opinions are more supported by and consistent with the overall evidence of record. See Buethe, 2021 WL 1966202, at *4.

As to Plaintiff's argument that Mr. McKinnon's opinion is more consistent with the evidence, while the ALJ reached a contrary conclusion, the ALJ did so in Plaintiff's favor. Specifically, while Mr. McKinnon determined that Plaintiff has a "fair ability" to complete a normal workday, Dr. Peterson found otherwise, concluding that Plaintiff has moderate limitations in this regard, and the ALJ included specific work restrictions such as the need for additional breaks to accommodate these limitations.

### B. Plaintiff's Subjective Statements and Testimony

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

///
///
///
///
///

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

At Step 4, the ALJ considered Plaintiff's subjective statements and testimony in determining residual functional capacity. See CAR 454-56. The ALJ stated as follows:

> . . .[T]he claimant alleges that she has intense mental health symptoms. The claimant also alleges that she stopped working because she went out on medical leave. She has neuropathy about her extremities that is worse when she is active. Her legs are affected from her feet to her knees, which is worse with walking. She had some relief with right leg surgery, but she

is limited to walking about 50 feet. She needs help with chores and shopping. She has difficulty dressing herself.

When considering the factors in Social Security Ruling 16-3p, there is evidence that is consistent with the claimant's allegations. The claimant has treated at Mountain View Family Medical for mood disorder and anxiety issues. (Ex. 1F). The claimant has also attended counseling with Robert McKinnon, LMFT. (Ex. 3F). Consistent with her allegations, the claimant was hospitalized from September 19, 2018, through September 21, 2018, after overdosing in a suicide attempt due to stressors at work. (Ex. 1F/14, 16; 2F/13). The claimant's provider provided a work excuse for the following six months. (Ex. 1F/15).

To complicate her condition, the claimant has treated for back and leg pain. Consistent with her allegations, October 22, 2019, electrodiagnostic testing showed evidence suggestive of an acute left L5 radiculopathy. (Ex. 5F/14). October 28, 2019, imaging showed new mild central stenosis at L3-4; new mild degenerative facet disease on the left at L3-4 and mild unchanged degenerative facet disease bilaterally at L4-5; an unchanged minimal posterior disc bulge with a superimposed annular tear at L5-S1; new mild disc desiccation at L3-4 consistent with mild degenerative disc disease; and unchanged mild mid lumbar dextroscoliosis. (Ex. 2F/4). On January 2, 2020, the claimant began treatment at Shasta Orthopaedics for leg pain diagnosed as compartment syndrome. (Ex. 5F). On May 22, 2020, the claimant underwent a right leg open facial release of the anterior, lateral, and posterior deep and superficial compartments. (Ex. 6F/5). On July 14, 2020, the claimant was recommended to undergo surgery on her left leg (Ex. 7F/5), which she testified that she underwent on July 17, 2020.

\* \* \*

Although there is some evidence that lends some support for the claimant's allegations, her allegations are not entirely consistent with the evidence when considering the factors in Social Security Ruling 16-3p. For example, progress notes as early as February 26, 2018, show that the claimant reported that medication worked well for her mood and anxiety, and she denied having any side effects. (Ex. 1F/19). In fact, the claimant demonstrated normal psychiatric examination findings including no pressured speech, no flight of ideas, and appropriate eye contact. (Ex. 1F/19). Although the claimant was hospitalized for suicidal ideation in September 2018, she told her provider on October 23, 2018, that she had ongoing depression but that she had a stronger group of friends and family, she tried to distract herself when she had dark thoughts, and she made a suicide pact. (Ex. 1F/13). Moreover, counseling notes show that the claimant often denied being a suicide risk since her hospitalization. (Ex. 3F).

Despite her allegations, the claimant told her provider, on November 16, 2018, that her medication was working well to help with her anxiety, and she was working with a counselor to learn strategies for returning to work. (Ex. 1F/11). By November 30, 2018, the claimant told her provider that counseling was helpful at reducing her anxiety about returning to work and that she felt that she was ready to return to work the following month. (Ex. 1F/9). By February 27, 2019, the claimant reported that she had a

> decrease in her symptoms since starting cognitive behavioral therapy interventions from her recent therapy sessions, her anxiety decreased, her energy increased, her depression was reduced, thought stopping helped with her runaway thoughts, and she had reduced relationship conflicts at home despite having daily stressors. (Ex. 3F/16). The claimant so improved that she testified that she returned to work on June 12, 2021.
>
> The claimant's allegations concerning her physical condition are also not entirely consistent with the evidence. For example, although the claimant was diagnosed with compartment syndrome when she began treatment at Shasta Orthopedics on January 2, 2020, her provider stated that it was not clear why she was having pain. (Ex. 5F/11). Moreover, progress notes show that the claimant has demonstrated normal range of motion about her ankles, hips, and knees; 5/5 lower extremity strength; and good sensation despite having moderate lower extremity tenderness. (Ex. 5F). Within two months of undergoing right leg surgery, the claimant's provider stated on July 14, 2020, that she was recovering as expected and a physical examination of her right lower extremity was normal. (Ex. 7F/4).

CAR 454-56.

Based on the foregoing, the ALJ concluded that Plaintiff's subjective statements and testimony "are not entirely consistent with the evidence." Id. at 456.

Plaintiff first argues that the ALJ's citation to Plaintiff's reports of doing better psychologically "make no sense" because those reports pre-date her suicide attempt in September 2018. ECF No. 17, pg. 26. Plaintiff cites Estrella v. Colvin, 174 F. Supp. 3d 1090, 1106 (D. Ariz. 2016) for the proposition that, in the context of mental impairments, reports of improvement and well-being must be evaluated with an awareness that such reports do not always mean that a claimant can function effectively in the workplace. See id. Second, as to physical limitations, Plaintiff contends that nothing in the medical evidence is inconsistent with her allegations of "limitations from lower extremity compartment syndrome," and that the ALJ erred in citing to normal strength and range of motion findings, which Plaintiff states are not valid measures of lower extremity compartment syndrome characteristic of pressure around the muscles causing pain from reduced blood flow. Id. at 27.

/ / /
/ / /
/ / /
/ / /

     1.  <u>Psychological Symptoms</u>

    The Court agrees with Plaintiff that reports that Plaintiff was doing better <u>before</u> her suicide attempt in September 2018 are not supportive of the ALJ's analysis. However, Plaintiff's alleged onset date is January 2019 – <u>after</u> her suicide attempt. Thus, the ALJ's reference to Plaintiff doing better before this date is of no moment. As to the period of time following the alleged onset date, the ALJ noted that Plaintiff reported in February 2019 – just a month after the alleged onset date – that her psychological symptoms were improving with cognitive behavioral therapy. In fact, Plaintiff was able to return to full-time work by June 2021. The Court finds no error in the ALJ's analysis, which is supported by some evidence.

     2.  <u>Physical Symptoms</u>

    The Court also finds no error with respect to the ALJ's evaluation of Plaintiff's subjective statements and testimony regarding her physical symptoms and limitations. As the ALJ noted, her treating doctors at Shasta Orthopedics stated in January 2020 that, while Plaintiff was being diagnosed with compartment syndrome, it was not clear why Plaintiff was experiencing pain. Additionally, following surgery, her treating provider stated in July 2020 that Plaintiff was recovering as expected and physical examination was normal.

  **C.**  **<u>Lay Witness Evidence</u>**

    In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." <u>Dodrill</u>, 12 F.3d at 919. When rejecting third party statements which are similar in nature to the statements of plaintiff, the ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement. See <u>Valentine v. Commissioner Soc. Sec. Admin.</u>, 574 F.3d 685, 694 (9th Cir. 2009) (approving

rejection of a third-party family member's testimony, which was similar to the claimant's, testimony, for the same reasons given for rejection of the claimant's complaints).

Plaintiff's boyfriend, Matthew Wilhelmson, submitted a Function Report supporting Plaintiff's allegations. The ALJ summarized Mr. Wilhelmson's statements in the hearing decision but did not otherwise comment on this evidence. See ECF No. 455. Plaintiff argues:

> While the ALJ acknowledges some of the limitations testimony received from Ms. Massa's boyfriend, C.Tr. 455, the ALJ provides not one reason for discounting that testimony, let alone germane reasons. Accordingly, remand is required.
>
> ECF No. 17, pg. 29.

Here, Defendant argues that, under the current regulations, it is an "open question" whether ALJ's are required to consider non-medical evidence at all. See ECF No. 21, pg. 9 (citing Fryer v. Kijakazi, No. 21-36004, 2022 WL 17958630, at *3, n.1 (9th Cir. 2022) (unpublished)). This Court is not prepared to answer this question based on a 2022 unpublished Ninth Circuit opinion but will instead look to the rules established under existing case law relating to nay witness evidence, noting in doing so that this case involves claims of chronic pain.

The ALJ need not discuss all evidence presented. See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, the ALJ must explain why "significant probative evidence has been rejected." Id. (citing Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981). Applying this standard, the court held that the ALJ properly ignored evidence which was neither significant nor probative. See id. at 1395. As to a letter from a treating psychiatrist, the court reasoned that, because the ALJ must explain why he rejected uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was controverted by other medical evidence considered in the decision. See id. As to lay witness testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court concluded that the evidence was properly ignored because it "conflicted with the available medical evidence" assessing the plaintiff's mental capacity. Id.

///

In Stout v. Commissioner, the Ninth Circuit considered an ALJ's silent disregard of lay witness testimony. See 454 F.3d 1050, 1053-54 (9th Cir. 2006). The lay witness had testified about the plaintiff's "inability to deal with the demands of work" due to alleged back pain and mental impairments. Id. The witnesses, who were former co-workers testified about the plaintiff's frustration with simple tasks and uncommon need for supervision. See id. Noting that the lay witness testimony in question was "consistent with medical evidence," the court in Stout concluded that the "ALJ was required to consider and comment upon the uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to work." Id. at 1053. The Commissioner conceded that the ALJ's silent disregard of the lay testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth Circuit rejected the Commissioner's request that the error be disregarded as harmless. See id. at 1054-55. The court concluded:

> Because the ALJ failed to provide any reasons for rejecting competent lay testimony, and because we conclude that error was not harmless, substantial evidence does not support the Commissioner's decision . . .

Id. at 1056-67.

From this case law, the Court concludes that the rule for lay witness testimony depends on whether the testimony in question is controverted or consistent with the medical evidence. If it is controverted, then the ALJ does not err by ignoring it. See Vincent, 739 F.2d at 1395. If lay witness testimony is consistent with the medical evidence, then the ALJ must consider and comment upon it. See Stout, 454 F.3d at 1053. However, the Commissioner's regulations require the ALJ consider lay witness testimony in certain types of cases. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); SSR 88-13. That ruling requires the ALJ to consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that are not shown by the medical evidence. See id. Thus, in cases where the plaintiff alleges impairments, such as chronic fatigue or pain (which by their very nature do not always produce clinical medical evidence), it is impossible for the court to conclude that lay witness evidence concerning the plaintiff's abilities is necessarily controverted such that it may be properly ignored. Therefore, in these types of cases, the ALJ is required by the regulations and case law to

consider lay witness evidence.

Here, the non-medical lay witness evidence from Mr. Wilhelmson is arguably controverted by the objective medical evidence for the same reasons the ALJ found for rejecting Plaintiff's statements and testimony.  However, this case involves claims of chronic pain related to Plaintiff's compartment syndrome, which was found to be a severe impairment.  Therefore, the ALJ was required to consider Mr. Wilhelmson's statements beyond simply noting them.  On the current record, the Court has no way of knowing the basis for rejecting Mr. Wilhelmson's statement.  The matter will be remanded to allow the Commissioner to either credit Mr. Wilhelmson's testimony or provide germane reasons for rejecting it.

### IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment, ECF No. 17, is granted
2. Defendant's motion for summary judgment, ECF No. 21, is denied
3. The Commissioner's final decision is reversed, and this matter is remanded for further proceedings consistent with this order.
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  June 18, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE